IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

TINA LYNN WHITE,

        Plaintiff,

v.                                Case No.: 2:19-cv-00494

ANDREW SAUL,
Acting Commissioner of the
Social Security Administration,

        Defendant.

## PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross motions for judgment on the pleadings as articulated in their briefs. (ECF Nos. 9, 10). The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned respectfully **RECOMMENDS** that Plaintiff's request for judgment on the pleadings be **DENIED**, the Commissioner's request for judgment on the pleadings be **GRANTED**, the

Commissioner's decision be **AFFIRMED,** and this case be **DISMISSED** and removed from the docket of the Court.

## I.  <u>Procedural History</u>

On August 3, 2015, Plaintiff, Tina Lynn White ("Claimant"), completed an application for DIB, alleging a disability onset date of May 5, 2015 due to "COPD, asthma, bipolar, and severe anxiety disorder." (Tr. at 174-75, 233). The Social Security Administration ("SSA") denied Claimant's application initially and upon reconsideration. (Tr. at 22). Claimant filed a request for an administrative hearing, which was held on October 31, 2017 before the Honorable Gina Pesaresi, Administrative Law Judge (the "ALJ"). (Tr. at 36-63). By written decision dated February 26, 2018, the ALJ found that Claimant was not disabled as defined in the Social Security Act. (Tr. at 19-35). The ALJ's decision became the final decision of the Commissioner on January 16, 2019 when the Appeals Council denied Claimant's request for review. (Tr. at 6-13).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 3). The Commissioner subsequently filed an Answer opposing Claimant's Complaint and a Transcript of the Administrative Proceedings. (ECF Nos. 7, 8). Thereafter, Claimant filed a Brief in Support of Judgment on the Pleadings, (ECF No. 9), and the Commissioner filed a Brief in Support of Defendant's Decision, (ECF No. 10). Consequently, the matter is fully briefed and ready for resolution.

## II.  <u>Claimant's Background</u>

Claimant was 42 years old on her alleged onset date and 45 years old when the ALJ rendered her decision. She has the equivalent of a high school education; communicates in English; and previously worked as a housekeeper, front desk clerk, and waitress. (Tr. at 57, 234).

III.  **Summary of ALJ's Decision**

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. § 404.1520. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 404.1520(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* § 404.1520(d). If the impairment does, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 404.1520(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, as the fifth and

final step in the process, that the claimant is able to perform other forms of substantial gainful activity when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 404.1520(g); *see also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d. 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. § 404.1520a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b). If an impairment exists, the ALJ documents his findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 404.1520a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* § 404.1520a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* § 404.1520a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and

4

the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* § 404.1520a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* § 404.1520a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each functional area described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for disability insurance benefits through September 30, 2021. (Tr. at 24, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since May 5, 2015, her alleged onset date. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant's COPD and asthma were severe impairments. (*Id.,* Finding No. 3). The ALJ also considered Claimant's depressive disorder and anxiety, but the ALJ concluded that the impairments were non-severe. (Tr. at 25-26). Under the third inquiry, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 26, Finding No. 4). Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant is limited to occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; frequently

balance; occasionally stoop, crouch, crawl, or kneel; never be exposed to unprotected heights or humidity and wetness, dusts, odors, fumes, and other pulmonary irritants, or extreme heat.

(Tr. at 26-29, Finding No. 5).

At the fourth step, the ALJ determined that Claimant did not have any past relevant work because her reported earnings were below the level of substantial gainful activity. (Tr. at 29, Finding No. 6). Therefore, the ALJ reviewed Claimant's past work experience, age, and education in combination with her RFC to determine her ability to engage in other substantial gainful activity. (Tr. at 29-30, Finding 7 through 10). The ALJ considered that (1) Claimant was born in 1973 and was defined as a younger individual age 18-44 on the alleged disability onset date, but subsequently changed age category to a younger individual age 45-49; (2) Claimant had at least a high school education and could communicate in English; and (3) transferability of job skills was not an issue because Claimant did not have any past relevant work. (Tr. at 29, Finding 7 through 9). Taking into account these factors, Claimant's RFC, and the testimony of a vocational expert, the ALJ determined that Claimant could perform other jobs that existed in significant numbers in the national economy, including sedentary unskilled work as a receptionist, assembler, or information clerk. (Tr. at 30, Finding No. 10). Consequently, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (Tr. at 31, Finding No. 11).

## IV.    Claimant's Challenges to the Commissioner's Decision

Claimant contends that the Commissioner's decision is unsupported by substantial evidence because the ALJ failed to properly analyze her chronic obstructive pulmonary disease (COPD) under Listing 3.02 and asthma under Listing 3.03 at step three of the sequential evaluation. She asserts three specific challenges to the ALJ's step three

analysis. First, Claimant argues that her pre-bronchodilator FEV1 value of 1.15 during her November 18, 2015 consultative examination satisfied Listing 3.02. (ECF No. 9 at 2, 6). Second, she claims that her hospitalizations and asthmatic attacks "could support meeting or equaling Listing 3.03." (*Id.* at 7). Third, Claimant states that the "ALJ did not engage the evidence and Listing requirements competently and should have employed the help of a medical expert to navigate the complicated Listings and pulmonary function testing to support her findings." (*Id.*).

In response to Claimant's challenges, the Commissioner argues that, despite Claimant's low pre-bronchodilator results during her consultative examination, Listing 3.02 concerns the *highest* value of at least three satisfactory forced expiratory maneuvers, including after the administration of a bronchodilator. The Commissioner notes that Claimant's post-bronchodilator readings during her consultative examination were higher than 1.15, and those results did not meet the listing. (ECF No. 10 at 10-11). The Commissioner states that Claimant did not present medical findings that demonstrated that her respiratory impairments met or equaled the criteria in Listings 3.02 or 3.03, and the ALJ provided sufficient explanation, with proper support from the record, to allow for meaningful review of her step three analysis.

## V.    **Relevant Evidence**

The undersigned considered all evidence of record and summarizes below the evidence that is most relevant to the issues in dispute. In this case, Claimant's challenges concern her spirometry test during her consultative examination and the length and frequency of her asthma-related hospitalizations. Therefore, the summary focuses on those medical records.

### A. Treatment Records

On May 11, 2013, Claimant presented to the Emergency Department at Boone Memorial Hospital. She complained of shortness of breath with cough. (Tr. at 523). Claimant was diagnosed with asthma and prescribed medications, but she left the hospital against medical advice to attend her son's college graduation. (Tr. at 524, 536). Claimant returned to the Emergency Department later that day, stating that her shortness of breath was worse, and she was wheezing. (*Id.*). She was diagnosed with unspecified asthma with acute exacerbation and tobacco use disorder. (Tr. at 542). Claimant was admitted to the hospital, treated with medications, and discharged on May 13, 2013. (Tr. at 545).

On October 24, 2013, Claimant was transported by ambulance to the Emergency Department at Boone Memorial Hospital because she was experiencing shortness of breath since the previous night despite administering five breathing treatments. (Tr. at 511). Her CT scan showed bilateral infiltrates, and the medical providers decided to transfer Claimant to a larger facility where she could receive a "higher level of care." (Tr. at 509-10). She was admitted to the Intensive Care Unit at Charleston Area Medical Center where she was treated for respiratory failure and bilateral pneumonia. (Tr. at 430). She was discharged on October 27, 2013. (Tr. at 438).

On July 21, 2015, Claimant again presented to Boone Memorial Hospital, complaining of shortness of breath. (Tr. at 494). She was diagnosed with acute bronchitis, asthmatic bronchitis, and exacerbation of COPD. (Tr. at 497). She was prescribed medications and discharged the following day. (*Id.*). Almost a year later, on July 3, 2016, Claimant was again in the Emergency Department at Boone Memorial Hospital for an asthma attack. (Tr. at 555). She arrived at 11:01 p.m., was administered medications, and discharged at 3:14 a.m. the next morning. (Tr. at 555, 557).

On May 5, 2017, Emergency Medical Services (EMS) was called to Claimant's place of employment when she suffered an asthma attack after inhaling someone's cologne. (Tr. at 622). A nebulizer treatment returned Claimant to "baseline." (*Id*.). She was taken to the hospital for evaluation and observation. (*Id*.). Her chest CT showed possible pneumonia. (Tr. at 595). However, Claimant did not have diminished breath sounds, wheezing, or rhonchi, and she stated that she felt better and wanted to go home. (Tr. at 622). She refused further care and went home that day. (Tr. at 580).

On May 7, 2017, Claimant was transported by ambulance to the Emergency Department at Boone Memorial Hospital due to shortness of breath upon mild exertion. (Tr. at 584). The preliminary diagnoses were bacterial pneumonia, dyspnea, and hypoxia. (Tr. at 604). She was admitted to the hospital where she was given antibiotics and other medications, and she stated that her symptoms improved and she was feeling better. (Tr. at 586, 603-04). She arrived at the hospital at 9:09 p.m. on May 7 and left at 1:40 p.m. on May 8. (Tr. at 597, 600).

### B. Evaluations and Opinions

On November 17, 2015, Kip Beard, M.D., performed an Independent Medicine Examination (IME) of Claimant, which included a spirometry test.[1] Claimant's best pre-bronchodilator FVC values were 1.95, 1.94, and 1.82, which were 60 and 56 percent of predicted value. (Tr. at 450). Her best FEV1 values were 1.15, 1.14, and 1.03, which were 42 and 38 percent of predicted value. (*Id*.). After Claimant was given albuterol, her best FVC scores were 2.02, 1.99, and 1.95, which were 62 and 60 percent of predicted value.

---

[1] A spirometry test is a type of pulmonary function study, which involves at least three forced expiratory maneuvers (a maximum inhalation followed by a forced maximum exhalation) during the same test session. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 3.00(E)(1) (effective Dec. 15, 2017 to Apr. 1, 2018). The volume of air that the claimant exhales in the first second of the forced expiratory maneuver is the $FEV_1$, and the total volume of air that the claimant exhales during the entire forced expiratory maneuver is the FVC. *Id*.

(Tr. at 451). Her best post-albuterol FEV1 scores were 1.24, 1.22, and 1.24, which were 45 percent of predicted value. (*Id.*). On the date of the test, Claimant was 42 years old and her height without shoes was 62 inches. (Tr. at 452).

In the interpretation section of the "Best Pre-Meds Summary Report," a person handwrote, "severe COPD with moderate pulmonary restrictive disease. No improvement after bronchodilation." (Tr. at 450), However, the "Interpreted by" section was left blank. (*Id.*). Dr. Beard likewise wrote in the summary of his IME report that Claimant's "pulmonary function show[ed] severe COPD with moderate restriction and no improvement post bronchodilator." (Tr. at 449).

On December 2, 2015, Hedy Mountbatten-Windsor, M.D., completed Disability Determination and Transmittal and Disability Determination Explanation forms, which concluded that Claimant was not disabled. (Tr. at 66-72, 74-76, 78-80). Dr. Mountbatten-Windsor specifically considered Claimant's November 2015 spirometry test results in her determination. Rabah Boukhemis, M.D., affirmed the assessment on March 2, 2016. (Tr. at 82-87, 89-91).

## VI.    Scope of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In Blalock v. Richardson, the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock*, 483 F.2d at 776 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

When examining the Commissioner's decision, the Court does not conduct a de novo review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001)). Instead, the Court's role is limited to insuring that the ALJ followed applicable regulations and rulings in reaching his decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VII.    **Discussion**

A claimant should be found disabled at step three of the sequential evaluation process when his or her impairments meet or medically equal an impairment included in the Listing in Appendix 1 of 20 C.F.R. Part 404, Subpart P. *See* 20 C.F.R. § 404.1520(a)(4)(iii). The Listing describes "for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." *See* 20 C.F.R. § 404.1525. The Listing is intended to identify those individuals whose mental or physical impairments are so severe that they would be found disabled regardless of their vocational background; consequently, the criteria defining the listed impairments are set at a higher level of severity than that required to meet the statutory definition of disability. *Sullivan v. Zebley,* 493 U.S. 521, 532, (1990). Because the listed impairments presume disability, "[f]or a claimant to show that his impairment matches a [listed impairment], it must meet *all* of the specified medical criteria." *Id.* at 530. The claimant bears the burden of production and proof at this step of the disability determination process. *Grant v. Schweiker,* 699 F.2d 189, 191 (4th Cir. 1983).

In the Fourth Circuit, "where there is factual support that a listing could be met,"

11

the ALJ must consider whether the claimant's impairment meets or equals the relevant listing. *Huntington v. Apfel*, 101 F. Supp. 2d 384, 390 (D. Md. 2000) (citing *Cook v. Heckler,* 783 F.2d 1168, 1172 (4th Cir. 1986)). "The ALJ's analysis must reflect a comparison of the symptoms, signs, and laboratory findings concerning the impairment, including any resulting functional limitations, with the corresponding criteria set forth in the relevant listing." *Id.* at 390-91; *see also Ezzell v. Berryhill*, 688 F. Appx. 199, 200 (4th Cir. 2017) ("When there is 'ample evidence in the record to support a determination' that the claimant's impairment meets or equals one of the listed impairments, the ALJ must identify 'the relevant listed impairments' and compare 'each of the listed criteria to the evidence of the claimant's symptoms.'") (citing *Cook*, 783 F.2d at 1172-73) (internal markings omitted).

As is the case throughout the sequential evaluation process, the ALJ must set forth the reasons for the step three determination. *See, e.g.*, *Radford v. Colvin*, 734 F. 3d 288, 295 (4th Cir. 2013) ("A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling.") (citing *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984)). An ALJ's explanation is insufficient if it only states that the ALJ considered the listing of impairments and offers nothing to reveal *why* the ALJ made his or her determination. *Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015) ("Our circuit precedent makes clear that it is not our role to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record."). Likewise, it is generally unacceptable for an ALJ to summarily conclude that a claimant does not have an impairment or combination of impairments that meets a listing; the ALJ's decision must include a discussion that applies the pertinent legal requirements of the listing to the record evidence. *Radford*, 734 F.3d at

295. While an "ALJ is not required to explicitly identify and discuss every possible listing," the ALJ "is compelled to provide a coherent basis for [the] Step Three determination." *Ezzell*, 688 F. App'x at 200 (citation omitted).

In *Radford*, the Fourth Circuit found that an ALJ's step three analysis was "devoid of reasoning" and the ALJ's summary conclusion that the claimant did not meet a listing made is impossible for a reviewing court to evaluate whether substantial evidence supported the ALJ's findings. *Radford*, 734 F.3d at 295. However, the Fourth Circuit noted that a full explanation by the ALJ was particularly important in Radford's case because the medical record included a fair amount of evidence supportive of his claim; in fact, the record contained five years of medical examinations and probative evidence strongly suggesting that Radford met or equaled the relevant listing. *Id*. Similarly, in *Fox*, the Fourth Circuit found that the ALJ failed to explain the step three finding despite inconsistent evidence in the file, including a treating physician's numerous statements about the claimant's severe limitations, which possibly supported a finding that the claimant met the relevant listing. *Fox*, 632 F. App'x at 755 (4th Cir. 2015).

Despite the admonitions of the Fourth Circuit in *Radford* and *Fox* regarding an ALJ's duty of explanation at step three, "if the ALJ's opinion read as a whole provides substantial evidence to support the ALJ's decision at step three, such evidence may provide a basis for upholding the ALJ's determination." *McDaniel v. Colvin*, No. 2:14-CV-28157, 2016 WL 1271509, at *4 (S.D.W. Va. Mar. 31, 2016) (quoting *Smith v. Astrue*, 457 Fed. Appx. 326, 328 (4th Cir. 2011) ("Reading the ALJ's decision as a whole, substantial evidence supports the finding at step three of the sequential evaluation process as the ALJ's analysis at subsequent steps of the evaluation are inconsistent with meeting [the listing].")). Indeed, "the ALJ need only review medical evidence once in his opinion." *Id*.

at *4 (quoting *McCartney v. Apfel*, 28 Fed. Appx. 277, 279 (4th Cir. 2002)). Ultimately, "[a] cursory explanation in step three is satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion." *Id.* (citing *Smith*, 457 Fed. Appx. at 328). Simply put, the written decision must demonstrate that the ALJ adequately performed all of the key tasks required by the sequential disability evaluation process. When the record includes conflicting evidence, or facts suggesting that the claimant might meet a listing, the ALJ's discussion is particularly important. Yet, "[i]f the court need not look beyond the ALJ's opinion to find substantial evidence supporting the ALJ's step-three determination, the ALJ's decision may be affirmed." *Marcum v. Berryhill*, No. CV 16-2297, 2017 WL 1095068, at *4 (S.D.W. Va. Mar. 23, 2017).

### A. Listing 3.02

Listing 3.02 concerns chronic respiratory disorders other than cystic fibrosis. The listing provides tables which indicate the FEV1 and FVC scores that meet the listing based on the claimant's age, gender, and height without shoes. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 3.02(A), (B) (effective Dec. 15, 2017 to Apr. 1, 2018). The claimant must produce evidence of FEV1 or FVC scores that are equal to or less than the values provided in the tables. *Id.* As explained, a spirometry test is a type of pulmonary function study, which involves at least three forced expiratory maneuvers (a maximum inhalation followed by a forced maximum exhalation) during the same test session. *Id.* at § 3.00(E)(1). The volume of air that the claimant exhales in the first second of the forced expiratory maneuver is the $FEV_1$, and the total volume of air that the claimant exhales during the entire forced expiratory maneuver is the FVC. *Id.* Of particular importance in this case, the regulation specifically states that the ***highest*** $FEV_1$ and FVC values are used to evaluate the

claimant's respiratory disorder under listing 3.02, regardless of whether the values are from the same forced expiratory maneuver or different forced expiratory maneuvers. *Id.*

If the claimant's FEV1 is less than 70 percent of his or her predicted normal value during the spirometry test, the regulation requires repeat spirometry after inhalation of a bronchodilator to evaluate the claimant's respiratory disorder under Listing 3.02, unless use of a bronchodilator is medically contraindicated. *Id.* at § 3.00(E)(2)(b). Even if the claimant used a bronchodilator before the test, and his or her $FEV_1$ is less than 70 percent of the predicted normal value, the claimant still must repeat the test after inhalation of a bronchodilator unless the supervising physician determines that it is not safe for the claimant to do so, in which case the test may need to be rescheduled. *Id.* If the claimant does not have post-bronchodilator spirometry results, the test report must explain why those results are not provided. *Id.*

In this case, the ALJ found that the record did not reflect FEV1 or FVC values that satisfied Listing 3.02. (Tr. at 26). However, Claimant contends that she met Listing 3.02(A) because her best pre-bronchodilator FEV1 result was 1.15 and someone wrote on that page of the report that she had no improvement after bronchodilation. (ECF No. 9 at 6). Based on Claimant's age of 42 years old and height of 62 inches at the time of the test, she needed to establish a FEV1 score of 1.15 or below to satisfy Listing 3.02(A). 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 3.02(A). Yet, although Claimant's best pre-bronchodilation FEV1 was 1.15, and someone wrote that she did not improve with bronchodilation, the objective test results demonstrated otherwise. Claimant's highest FEV1 scores during the same examination after she was given albuterol were 1.24. (Tr. at 451). Therefore, Claimant's post-bronchodilator FEV1 scores were higher than the threshold provided in the listing. *Thomas v. Berryhill*, No. 1:17CV337, 2018 WL 2417861, at *4 (M.D.N.C. May

15

29, 2018) ("The largest value among the test results is to be used, whether that value is from the claimant's pre-bronchodilator or post-bronchodilator testing.") (citation and markings omitted); *Bumgarner v. Colvin*, No. 1:12-CV-000138-FDW, 2013 WL 3816604, at *4 (W.D.N.C. July 22, 2013) ("The Listing requires that the noted FEV$_1$ result be the highest of at least three trials, regardless of which tracing (before or after use of a bronchodilator) the result is taken from.").

Although the ALJ cited the handwritten note on Claimant's November 2015 spirometry test, which stated that Claimant did not experience any improvement from the bronchodilator, the ALJ chose to rely on the objective test results, which indeed showed that Claimant's post-bronchodilation results eliminated her from satisfying Listing 3.02. (Tr. at 26-27). To the extent that the ALJ did not discuss or reconcile in more detail the handwritten notation on the pre-bronchodilation portion of the test suggesting that Claimant did not improve from bronchodilation, it constitutes harmless error. The Court need not look beyond the decision or supply *post hoc* rationale, as the Fourth Circuit cautioned against in *Radford* and *Fox*, in order to find substantial evidence for the ALJ's step three decision. The objective test results unambiguously demonstrated that Claimant did not meet Listing 3.02(A), and the ALJ properly relied on those results in her step three determination. (Tr. at 26). There were no contrary spirometry studies that showed that Claimant possibly met the listing, and as far as the handwritten notation on the November 2015 spirometry test, Listing 3.02 requires actual FEV1 or FVC values, not a physician's interpretation of those results. Therefore, Claimant fails to assert any error by the ALJ in relying on the objective testing. Furthermore, the ALJ step three analysis is supported by the opinion evidence. The ALJ gave significant weight to the opinions of the state agency physicians that reviewed Claimant's records, including Dr. Beard's IME and spirometry

results, and those experts found that Claimant's COPD did not meet a listing. (Tr. at 29).

Therefore, the undersigned **FINDS** that the ALJ's step three analysis and determination regarding Listing 3.02 complied with the law and was supported by substantial evidence.

### B. Listing 3.03

Listing 3.03 concerns asthma, and is satisfied by a FEV1 score that is less than or equal to the value in the table that corresponds to the claimant's age, gender, and height without shoes. *Id.* at § 3.03(A). Like Listing 3.02, the highest FEV1 score is used to evaluate whether a claimant satisfies Listing 3.03, including post-bronchodilator results unless use of a bronchodilator is medically contraindicated. *Id.* at §§ 3.00(E)(1), 3.00(E)(2)(b). However, there is an additional requirement. The FEV1 score that is offered to meet Listing 3.03 must have been obtained during the same 12-month period that the claimant had exacerbations or complications from asthma that required three hospitalizations. *Id.* at § 3.03(B). The hospitalizations must have occurred at least 30 days apart, each lasting for at least 48 hours, including time in the emergency room before admission, and the three hospitalizations must have occurred during a 12-month period under review by the Agency. *Id.*

Here, the ALJ found that there was no evidence of chronic asthmatic bronchitis, chronic impairment of gas exchange, or asthma attacks occurring with the frequency shown in Listing 3.03. (Tr. at 26). In a single sentence, Claimant asserts that "[t]here is also evidence in the record of hospitalizations and asthmatic attacks that could support meeting or equaling Listing 3.03." (ECF No. 9 at 7). She does not cite to any such evidence. (*Id.*). Reviewing the record, the undersigned does not find evidence of asthma-related exacerbations that meet Listing 3.03. Claimant was hospitalized for acute exacerbation of

asthma on May 11, 2013 through May 13, 2013. (Tr. at 542, 545). She was also hospitalized for respiratory failure and bilateral pneumonia on October 24, 2013 through October 27, 2013. (Tr. at 438, 509-11). Finally, Claimant was in the hospital for asthma-related issues on July 21, 2015; July 3, 2016; and May 5 and 7, 2017, but all of the visits lasted far less than 48 hours. (Tr. at 497, 555, 580, 597, 600, 622). The record does not contain evidence that claimant had exacerbations or complications from asthma that required hospitalizations that met the frequency and durational requirements of Listing § 3.03. Therefore, the undersigned **FINDS** that the ALJ's analysis of Listing 3.03 complied with the law and was supported by substantial evidence.

### C.  *Duty to Develop the Record*

In her final challenge, Claimant argues that the ALJ should have consulted a medical expert or ordered additional testing to assess whether Claimant medically equaled Listing 3.02. (ECF No. 9 at 7). The ALJ's duty was to ensure that the record contained sufficient evidence upon which she could make an informed decision. *Ingram v. Commissioner of Social Security Administration,* 496 F.3d 1253, 1269 (11th Cir. 2007); *see also Weise v. Astrue,* No. 1:08-cv-00271, 2009 WL 3248086 (S.D.W. Va. Sept. 30, 2009). Consequently, when examining the record to determine if it was adequate to support a reasoned administrative decision, the court looks for evidentiary gaps that resulted in "unfairness or clear prejudice" to Claimant. *Marsh v. Harris,* 632 F.2d 296, 300 (4th Cir. 1980).

In this case, Claimant had a consultative medical examination, which included a pulmonary function test and other tests, and two state agency physicians reviewed those findings, as well as all of Claimant's other records. The physicians signed Disability Determination and Transmittal forms and Disability Determination Explanation forms,

18

which concluded that Claimant was not disabled. (Tr. at 66-97). Therefore, there was no need for the ALJ to develop the record further, as the record contained sufficient evidence that Claimant did not meet or equal Listing 3.02 or 3.03. *Smith v. Astrue*, 457 F. App'x 326, 328 (4th Cir. 2011) (stating, in response to a claimant's argument the ALJ should have obtained the opinion of her treating physician or another expert as to whether she equaled Listing 1.02, that the ALJ obtained the required opinion because the state agency physicians signed Disability Determination and Transmittal Forms, which ensured "that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review.") (quoting SSR 96–6p, 1996 WL 374180, at *3); *Flesher v. Colvin*, No. 2:14-CV-30661, 2016 WL 1271511, at *4 (S.D.W. Va. Mar. 31, 2016), *aff'd sub nom. Flesher v. Berryhill*, 697 F. App'x 212 (4th Cir. 2017); *Nations v. Colvin*, No. 1:14-CV-00190-MOC, 2015 WL 1893655, at *8 (W.D.N.C. Apr. 27, 2015).

Therefore, the undersigned **FINDS** that the record contained sufficient information for the ALJ to evaluate Listings 3.02 and 3.03, and the ALJ's step three determination was supported by substantial evidence.

## VIII.  <u>Recommendations for Disposition</u>

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **DENY** Plaintiff's request for judgment on the pleadings, (ECF No. 9); **GRANT** Defendant's request to affirm the decision of the Commissioner, (ECF No. 10); and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is

hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Judge and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:**  May 15, 2020

Cheryl A. Eifert
United States Magistrate Judge